Lehman, Sp J.,
delivered the opinion of the court:
The controversy in this cause involves the liability of the 'defendants to the complainant, the Planters’ Insurance Company, on a bond, which is as follows:
“Whereas, in pursuance of a resolution of the board of directors of the Planters’ Insurance Company, passed at the office of the company, on the fourteenth day of July, 1869, it was resolved That a committee of five be appointed (two of whom shall be of the present stockholders of the company, and three of the recent subscribers to the stock of the company), who shall investigate the present condition of the company, and determine the value of the stock therein, and the terms on which the new organization shall be made. Their report shall be handed to the secretary *303 of the company as soon as practicable, and held by him for the information of the subscribers to the stock of the company, and shall be the basis of agreement between the old company and the new.’ And, whereas, in pursuance of said resolution, the following gentlemen were mutually chosen and appointed by the company, and the subscribers of new or additional stock to the same, a committee to' carry out and effectuate the object and purposes of said resolutions, viz.: Henry M. Lowensteine, J. G. Lansdale, and 33. K. Pullen, upon the part of the new subscribers of stock, and Wm. Kichardson Hunt and D. H. Townsend, upon the part of the company. And the said committee!, after a full investigation of the affairs of the company, and duly deliberating upon the subject embraced in said resolution, have made and returned their report, which is in the words following:
“ 'The old stockholders shall give a bond to indemnify the new stockholders, on account of any loss that may accrue from the old business, on the following conditions: (1) That the new company shall purchase from the old company its charter, its office furniture, and its stock in the Southern Life Insurance Company, and shall assume the payment of its notes due for rent of office from and after the first day of August next; (2) that the new company loan money, not exceeding $10,000, to the old company, at such times and in such sums as may be necessary to enable them to pay losses, etc., on account of the old business, at the ordinary rate of interest; (3) that the new company shall make such orders, etc., as shall be necessary to conduct and conclude the old business in the most advantageous manner; (4) the value of the charter to be left to arbitration. “ ‘Henry hi. Lowensteine.
“ Wm. Kichardson Hunt.
“ ‘J. G. Lansdale.
“ Hen. K Pullen.
“ T). H. Townsend.’
*304 “And, whereas, we, the undersigned stockholders in the old company or present organization, being satisfied with the terms agreed upon by said committee, do hereby accept the same, and do by these presents, severally bind and obligate ourselves to the new subscribers of the stock in the said company, and to the said company when reorganized, to protect and secure, them and each of them harmless against any and all loss or damage which the said company may be liable for on account of the business done by the company prior to the first day of August, 1869; each of us pledging and obligating ourselves to pay such loss or damage in proportion to the amounts- unpaid upon our subscription of stock in said company, not to exceed the amounts so due by us respectively.
“In witness whereof ‘we have hereto set our hands and affixed our seals this the twenty-first day of July, 1869.
“The above obligation is made and executed upon the following conditions, which are agreed to by the new subscribers to the stock of said company, viz.: (1) The proceeds of the property and assets of the present company shall be exclusively applied to the payment of its liabilities; and the directors of the company under the new organization shall, on application >of the signers of this bond, or a majority of them-, or their representatives, adopt'any and all regulations or orders not inconsistent with the charter and present by-laws of the- company, or its interests, which may be deemed necessary and proper for the management, control, and disposition of such assets and property to the best advantage. (2) Any assets, property, or effects remaining over on the business of the old company, after the payment of the debts, losses, and liabilities above specified, shall belong to and be paid over to the signers of this bond in proporción to the amount of stock that each of them, his, or her representatives may hold in the company as it now exists, and shall be subject exclusively to their control. (_3) That the new company, when reorganized, *305 shall loan to the signers of this bond, or appropriate at the request of a majority of them, or their representatives, for the purpose of the present company, in such sums and at such times as may be necessary for paying off such liabilities, an amount of money not to exceed, in the aggregate, the sum of $10,000, for the loan of which the new company shall charge only the ordinary rate of interest
“And that no misunderstanding may hereafter arise as to the meaning, purport, and intention of this bond and agreement, the original report of the committee embodied herein is taken and made a part hereof.
“M. J. Wicks. ’
“W. F. Taylor.
“Newton, Ford & Co.
“Jas. S. Wilkins.
“J. F. Frank & Co.
“J. F. Dowdy.
“G. V. Iiambant.
“Edwards, Pittigrew & Co.
“B. Bayliss.
“'Geo. Dixon.
“Chas. Kortrecht.
“Henry Craft.
“D. II. Townsend.
“Martin Walt.
“Wm. Bichardson Hunt.”
The chancellor adjudged the defendants liable on this bond, and ordered a reference to the master, to ascertain how much they should severally be adjudged to pay of the debts of what is called the old corporation, and which were satisfied by the so-called new company. From such decree the defendants prosecuted an appeal to' this court, and the commission of referees report in favor of the affirmance of the same.
The main ground of the exceptions to that report is to *306 tbe effect tbat tbe bond, which is the basis of this action, was not binding on the defendants. In this connection it is urged: First, that such a contract was not binding under the charter of tire plaintiff corporation; and, second, that no consideration passed to sustain the contract.
By sec. 10 of the charter, it is provided “that, for the better security of policy holders, the said company may add thereto a guaranty or stock capital, not exceeding two hundred thousand dollars.” The corporation appears to be a mutual insurance company, and was thus authorized, in addition to.its other resources, to establish by subscriptions a capital stock. It commenced operations in 1861, on a capital, as the record discloses, of about $66,500. In 1869, it was found the company had lost money, and its credit was impaired, and it was deemed best to reorganize the company, procure additional stock subscriptions, with a guaranty for the payment of the existing debts and liabilities of the corporation by the old stockholders, so as to give entire immunity to the new stockholders from such debts. It is not probable that new subscriptions could have been obtained without such guaranty. 'Disinterested parties could hardly have been expected to invest their means in an insolvent institution, with almost the certainty of having a considerable part of their contributions swallowed up in the payment of corporate liabilities contracted without their participation. The truth is, the old stockholders were satisfied the corporation was crippled to such an extent as to require the winding up of its affairs, unless they procured the aid of large new stock subscriptions.
In this condition of affairs, the old stockholders resorted to the plan of reorganization set forth in the agreement of July, 1869. That benefits would probably accrue to them from this step cannot be questioned. The corporate assets were thereby put in the bands of the new organization for such prudent administration as would produce, in all probability, largely more than could have been realized *307 therefrom in a forced and speedy liquidation. The old stockholders had then paid only 20 per cent, of their stock subscriptions, and they were liable to crediors for large sums, and consequently intersted in realizing as much as possible out of the corporate assets. The corporation was authorized by the charter to fix its capital stock at the amount agreed upon under the arrangement of July, 1869. The assumption of the debts by the old stockholders was prejudicial to no one, unless to themselves, and contravened no public policy. W e are of opinion that the arrangement of July, 1869, was not in violation of complainant’s charter. The contention that the bond executed by the defendants has no consideration to support, cannot be maintained. We have already shown that it was, when made, expected to be beneficial and advantageous to the defendants, and we deem it unnecessary to discuss this question further.
The defendants insist that their undertaking, by the terms of the bond, was to the new stockholders, and thereupon contend that the right of action thereon existed exclusively in such stockholders, or, at least-, in them and the corporation jointly. This, position is erroneous. The intention of the parties to the bond was evidently that the corporation should pay the debts, with the right to reimbursement from the defendants.
Objection is made on behalf of the defendant, George R Phelan, administrator de bonis non of W. R Hunt, deceased, that the cause was not properly revived against him. The bill was filed against William Joyner, as executor of said decedent. The death of William Joyner was suggested on December 23, 1878. Scire facias was issued against Phelan on February 6, 1880, and served, and the cause was revived as to him on November 24, 1880. The revivor was properly allowed. Erwin v. Poster, 6 Lea, 187.
The defense is also made for all the defendants that, the bond was not to be effective until it was signed by all of the defendants. This presents a question of fact which *308 botb the chancellor and the commission of referees, in their report, decided adversely to' the defendants. The evidence in the record satisfies us that this was correct. The bond was executed in 1869, and the evidence on the subject, which came on their behalf from some of the defendants themselves, was taken in 1881, quite twelve years after the execution of the bond, and when they were resisting a recovery by the complainant in this suit. One of these witnesses admits that, during the first year immediately succeeding the reorganization of the corporation, he acted as a director in the company. It is hardly probable that he would have acted in that capacity without inquiring or being advised as to the adoption or abandonment of the plan on which the new stockholders made their subscriptions. We are satisfied this witness was mistaken in his statement that he was not to be liable unless all the old stockholders signed the bond.
The witness, Di’. D. T. Porter, who, as a member of Newton, Ford & Co., was one of the parties to the bond, and testifies against his own interst, gives the most satisfactory explanation of this business. He says: “Learning that the company was then in a bad condition, we tried to sell our stock, and -went so far as to offer to give a premium to- any one who would take the stock off our hands, and relieve us from liability. Failing, in this, it was to' our interest to have the company reorganized. . . . The understanding was the bond was to be made a good bond for $20,000.” Further on, he says: “The impression made on me was that the assets were worth more than the liabilities, and there would be a surplus for the old stockholders. Under that impression, some were allowed to surrender their stock, and not sign the bond.” The whole evidence has made the impression on our minds that some of the signers of the bond expected all the old stockholders to join them as obligors thereon, but that tire real inducement for their signatures was the benefit which they *309 believed they would reap from the reorganization. Indeed, we doubt whether the defendants could have availed themselves of this defense if they had established the allegations upon which they based it. They were aware for a number of years of the operations of the corporation under the reorganization, which was continued for their benefit, and that, on the faith thereof, many persons had been induced during that time to subscribe and pav for stock. Upon such a state of facts, we think it would be inequitable to uphold this defen'se.
The decree of the chancellor will be affirmed, and the report of the referees confirmed.
The defendants will pay the costs of this court and of the court below. The cause will be remanded for the execution of the order of reference made by the chancellor in his decree.